UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DONALD J. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-05-183-B-W |
| | ) | |
| THERESA BAKER | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On November 29, 2005, Donald J. Williams brought a five-count complaint against Theresa Baker including, under Count I, an alleged violation of his constitutional right of privacy. Because the allegedly disclosed information was already a matter of public record, the Court grants Ms. Baker's motion for summary judgment as to Count I and declines to exercise supplemental jurisdiction over the remaining state law claims.

**I. STATEMENT OF FACTS**

Donald J. Williams was the personal representative of the estate of his mother, Marie Williams, and as of the spring of 2002, there were ongoing items of contention between Mr. Williams and the state of Maine, regarding his mother's estate. *Def.'s Statement of Material Facts* (DSMF) ¶ 7, 20 (Docket # 14); *Pl.'s Reply to Def.'s Statement of Material Facts* (PRDSMF) ¶ 7, 20 (Docket # 20). In June, 2002, Mr. Williams' daughter, Annette Gustin was host to several individuals at her home in Venice, Florida. DSMF ¶ 12; PRDSMF ¶ 12; *Pl.'s Opposing Statement of Material Facts* (POSMF) ¶ 3 (Docket # 20); *Def.'s Reply to Pl.'s Opposing Statement of Material Facts* (DRPOSMF) ¶ 3 (Docket # 22). One guest was

Theresa Baker,[1] then employed with the Maine Revenue Service as a Taxpayer Assistant Specialist. DSMF ¶¶ 4-6; PRDSMF ¶¶ 4-6. It was in this setting that Mr. Williams alleges Ms. Baker told Ms. Gustin confidential facts about her grandmother's estate: that her grandmother's estate had claimed Maine residency, that the employees at the Maine Revenue Service were shocked at this claim, and that her grandmother's estate was worth $640,000.00.[2] DSMF ¶ 8; PRDSMF ¶ 8; POSMF ¶¶ 10, 12; *Compl.* ¶ 13 (Docket # 1). Ms. Gustin was shocked that Ms. Baker, a woman she barely knew, would reveal such private information, especially since Ms. Gustin herself was unaware of the information. POSMF ¶¶ 5, 11.

The month before this conversation, in early May, 2002, in his capacity as personal representative of his mother's estate, Mr. Williams had filed documents with the Kennebec County Probate Court in his Response to Petition to Compel Production of Estate Inventory and Interim Accounting. DSMF ¶ 27; PRDSMF ¶ 27. The probate filings included an inventory showing the value of the Estate of Marie Williams to be over $1,300,000 and demonstrating that her estate had claimed Maine residency.[3] *Id*. As personal representative of the Estate, Mr. Williams filed an Estate Tax Return with the Maine State Revenue Service on behalf of his mother's Estate. DSMF ¶¶ 22, 23; PRDSMF ¶¶ 22, 23. The May 2002

---

[1] Ms. Baker was then known as Theresa MacMaster. POSMF ¶ 4; DRPOSMF ¶ 4.

[2] There was some intimation in the pleadings that Ms. Baker also revealed information about other disputes Mr. Williams was having with the Maine Revenue Service. At oral argument on December 11, 2006, the parties confirmed that Mr. Williams' other personal issues with the Maine Revenue Service were not at issue in this law suit. Also, Ms. Baker denies disclosing either the value of the Estate or any other information regarding Mr. Williams' tax issues. DSMF ¶¶ 10-11. However, as this is a factual dispute within the context of the motion for summary judgment, this Court must assume she engaged in the behavior as alleged. POSMF ¶¶ 5, 10, 12.

[3] The fact that the Williams estate was claiming Maine residency was not mentioned directly in the statements of material fact. Instead, the assertion of Maine residency appears in the estate tax return, DSMF (Docket # 14, Ex. 1 at 75) referenced in statement 28 of the Defendant's Statement of Material Fact and attached as an exhibit to the Statement. At oral argument, the parties agreed that, in ruling on the motion for summary judgment, the Court could consider not only that the estate asserted Maine residency, but also that this assertion had been filed with the Kennebec County Probate Court in May, 2002, before the June, 2002 conversation.

probate court filings included a copy of the Estate Tax Return for his mother's Estate, which Mr. Williams signed in 1999, showing that the Estate was worth over $1,300,000. DSMF ¶ 28; PRDSMF ¶ 28. On May 16, 2002, Plaintiff filed with the Kennebec County Probate Court a document showing the real estate within the Estate of Marie Williams to be worth $170,000 and tangible property to be worth just over $1,000,000. DSMF ¶ 30; PRDSMF ¶ 30. The documents filed in the Kennebec County Probate Court were public record. DSMF ¶¶ 29, 31; PRDSMF ¶¶ 29, 31.

Due to Ms. Baker's disclosures to Ms. Gustin, Mr. Williams, in his individual capacity, has brought a five-count complaint against Defendant, claiming: (1) Violation of Constitutional Right to Privacy, (2) Publicity Given to Private Life, (3) False Light, (4) Defamation, and (5) Negligence. *Compl.* at 4-7. Ms. Baker has moved for summary judgment as to all counts. *Def.'s Mot. for Summ. J.* (Docket # 15).

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "Once the movant avers an absence of evidence to support the nonmoving party's case, the latter must adduce specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" *Sheinkopf v. Stone*, 927 F.2d 1259, 1261 (1st Cir. 1991)(citation omitted). An issue is "genuine," if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is

"material" if it has the "potential to affect the outcome of the suit under the applicable law." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000). In applying this standard, the record is viewed in the light most favorable to the nonmoving party. *FDIC v. Anchor Properties*, 13 F.3d 27, 30 (1st Cir. 1994).

### B. The Allegations

Plaintiff asserts a violation of his constitutional right of privacy. Citing 36 M.R.S.A. § 191, a Maine statute that prohibits state employees from disclosing the confidential information contained in tax returns and imposes criminal penalties for doing so, Plaintiff concludes that he "was compelled to bring this action" because "Defendant Baker was not dismissed… [and] the Department of Revenue acted in such a cavalier fashion when presented with a manifest breach of confidentiality by its employee…."[4] *Pl.'s Opp'n to Mot. for Summ. J.* at 3 (Docket # 19). Plaintiff states, "[t]here is no private right of action under 36 M.R.S.A. §191… [but the] statute further provides that 'If the offender is an officer or employee of the State, he shall be dismissed from office.'" *Id*. at 3. Plaintiff maintains that the disclosure of confidential information violated his constitutional right of privacy and is actionable under 42 U.S.C. § 1983, claiming that "[t]his case fits squarely into the template of cases analyzing § 1983 liability for unlawful disclosure of confidential information." *Id*. at 4.

---

[4] 36 M.R.S.A. § 191(1) reads in part:
> Except as otherwise provided by law, it is unlawful for any person who, pursuant to this Title, has been permitted to receive or view any portion of the original or a copy of any report, return or other information provided pursuant to this Title to divulge or make known in any manner any information set forth in any of those documents or obtained from examination or inspection under this Title of the premises or property of any taxpayer.

36 M.R.S.A. § 191(4) provides: "Any person who willfully violates this section shall be guilty of a Class E crime. If the offender is an…. employee of the State, he shall be dismissed from office."

### C. The Right of Privacy and Section 1983

A violation of an individual's right of privacy can form the basis for a cause of action under § 1983. *Borucki v. Ryan*, 827 F.2d 836 (1st Cir. 1987); *Pouliot v. Town of Fairfield*, 226 F. Supp. 2d 233, 247 (D. Me. 2002). The right of privacy has been divided into two branches: "the individual interest in avoiding disclosure of personal matters, and… the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 599 (1977); *Pouliot*, 226 F. Supp. 2d at 247. "The former is often labeled as an interest in 'confidentiality' and the latter an interest in 'autonomy'." *Pouliot*, 226 F. Supp. at 247; *Vega-Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 182-83 (1st Cir. 1997).

Still, it remains unclear whether the constitutional right of privacy extends to the disclosure of personal financial information. In *Vega-Rodriguez*, the First Circuit cited *Borucki*, 827 F.2d at 841-42 as "suggesting that the right of confidentiality protects only information relating to matters within the scope of the right to autonomy." *Vega-Rodriguez*, 110 F.3d at 183. The autonomy branch of the right of privacy, in turn, is "limited to decisions arising in the personal sphere -- matters relating to marriage, procreation, contraception, family relationships, child rearing, and the like." *Id*. *Vega-Rodriguez* also intimates, however, that the range for the confidentiality branch may reach "profligate disclosure of medical, financial, and other intimately personal data." *Id.*

Here, the Court need not resolve the question left unsettled in *Vega-Rodriguez*, whether Ms. Baker's disclosure of personal financial information constitutes a cognizable violation of the right of privacy. This case is resolved on a preliminary question: whether the information was private to begin with.

**D. The Fatal Flaw**

Plaintiff's allegations are fatally flawed, because the information allegedly disclosed was previously a matter of public record. Even assuming the questionable premise that a violation of a Maine confidentiality statute constitutes a violation of a constitutional right of privacy, "[t]here is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public. Thus, there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record . . . ." Restatement (Second) of Torts § 652D (1977) (Comment (b)). In *Cox Broadcasting Corporation v. Cohn*, the Supreme Court concluded that there was no invasion of privacy when a broadcasting company publicized the name of a rape victim, since the broadcaster obtained the name through court papers. 420 U.S. 469, 494-95 (1975) ("interests in privacy fade when the information involved already appears on the public record."). The general principle that matters of public record are not private applies with even greater force to information in documents filed as part of a court proceeding. *Id.* at 492-93.

Plaintiff's first claim is that Ms. Baker disclosed matters related to Mr. Williams' mother's estate.[5] To evaluate this claim, it is necessary to compare what Ms. Gustin says Ms. Baker told her about her mother's estate with what was already a matter of public record. The Complaint alleges:

---

[5] It is not at all clear whose right of privacy is at stake here. At oral argument, Plaintiff conceded that neither the decedent nor her estate could file a claim for invasion of privacy. An action for invasion of privacy "can be maintained only by a living individual whose privacy is invaded." *Hiltner v. Simon & Schuster, Inc.*, 34 Fed. Appx. 394, 395 (1st Cir. 2002) (citation omitted); *Nelson v. Maine Times*, 373 A.2d 1221, 1225 (Me. 1977). Although he was the personal representative of his mother's estate, Mr. Williams did not initiate the claim in that capacity and, even though it might be assumed that he is a beneficiary of the estate, this fact is neither alleged in the Complaint nor contained in any of the statements of material fact. Even if, however, Mr. Williams is a beneficiary of his mother's estate, it remains dubious whether he may claim that his own right of privacy was invaded by the revelation of financial information about the estate of another person. This seems particularly so, since there is no allegation that his personal financial stake was ever disclosed. Finally, a number of the Plaintiff's statements of material fact are directed to what Ms. Gustin knew and how she reacted to the disclosure. POSMF ¶¶ 5, 7, 8, 9, 11, 14, 15. Yet, Ms. Gustin is not a party to the law suit.

> At another point in the conversation, Baker told Gustin that her grandmother's estate had been filed as a Maine resident, and that "in our eyes, your grandmother is not a Maine resident." Baker went on to disclose that Gustin's grandmother's estate was valued at $640,000.00. This was information that Gustin did not know and had no reason to know, and Plaintiff had not shared this information with Gustin. Gustin was shocked to hear this information from a person that she barely knew.

*Compl.* ¶ 13. The Statements of Material Fact contain no further elaboration.[6]

The Statements of Material Fact confirm that in early May 2002, Mr. Williams as personal representative of the Estate of Marie Williams filed documents with the Kennebec County Probate Court, including an inventory showing the Estate to be worth over $1,300,000.00. DSMF ¶ 27. The Plaintiff admitted the inventory is a public document. DSMF ¶ 29; PRDSMF ¶ 29. The main allegation against Ms. Baker – that she revealed the size of the Estate of Marie Williams – does not state a cause of action for a violation of the constitutional right of privacy, because the information she disclosed was not private; it was public.

In addition, Ms. Baker allegedly disclosed that the people at the Maine Revenue Service were "shocked" that the Estate had filed for Maine residency. POSMF ¶ 12. The Defendant responds that the Estate's claim of Maine residency was a matter of public record before the June, 2002 conversation.[7] DSMF ¶ 29, 31. The Estate Tax Return lists the legal

---

[6] Regarding what Ms. Baker allegedly told Ms. Gustin about the estate, the Plaintiff's Opposing Statements of Material Facts assert: 1) Gustin had an expectation of getting funds from her grandmother's Estate, but never had any idea what it was worth, POSMF ¶ 7; 2) Gustin never had any idea "what my grandparents were worth" and did not think it was "her business," POSMF ¶ 8; 3) Gustin knew nothing of the details concerning the estate litigation involving Mr. Williams, POSMF ¶ 9; 4) Defendant Baker has told her "… my grandmother's estate was valued at $640,000," POSMF ¶ 10; 5) None of this information was known to Gustin nor was Defendant Baker authorized to disclose the information, POSMF ¶ 11; and, 6) [Baker] told Gustin that "Frankly we are all pretty shocked that your grandmother filed for Maine residency." POSMF ¶ 12.

[7] As noted, the Defendant's reference to this fact is oblique. None of the Defendant's statements of material fact directly state as much. Again, however, statement 28 of the Defendant's Statement of Material Fact asserts that Mr. Williams attached the Estate Tax Return to a document he filed with the Kennebec County Probate Court and statement 29 asserts that the documents filed with the Probate Court are public documents. Plaintiff admitted both Statements. The Estate Tax Return lists the residency of Ms. Williams as "Monmouth, Kennebec

residency at the time of Ms. Williams' death as "Monmouth, Kennebec County, Maine." Further, it was filed in the Kennebec County Probate Court in May, 2002 before the June, 2002 conversation. Again, then, the Estate's claim of Maine residency was a matter of public record before Ms. Baker allegedly revealed that fact to Ms. Gustin.

The Court is left, therefore, with the argument that Ms. Baker's mere statement that the employees of the Maine Revenue Service were "shocked" that the Estate claimed Maine residency, by itself, is a constitutional violation. But, this statement is neither a fact about the late Ms. Williams nor about the Plaintiff; it is nothing more than an observation about the reactions of Maine state employees upon learning about publicly recorded information. To state the proposition reveals its weakness.

Plaintiff argues that his claim of a violation of the right of privacy should not be foreclosed because of the fortuity that the information was – unbeknownst to the discloser – buried somewhere in a public filing. This argument has a ring of practicality, but does not withstand analysis. First, the constitutional right of privacy does not encompass every disclosure of a personal matter. As *Vega-Rodriguez* stated, the right of privacy has "its origin in the Fourteenth Amendment's concept of personal liberty" and is limited "to fundamental rights that are implicit in the concept of an ordered liberty." *Vega-Rodriguez,* 110 F.3d at 182. To state a claim for a violation of the constitutional right of privacy, the complainant must establish that he has "an objectively reasonable expectation of privacy…." *Id*. Once the Plaintiff publicly filed details concerning the Estate, he could no longer have "an objectively reasonable expectation" that they would remain private. Second, Plaintiff's argument is directly contrary to the public policy implications outlined in *Cox Broadcasting*:

---

County, Maine." *DSMF*, Ex. 1 at 75. At oral argument, the parties agreed that the Court could consider the assertion of residency in the Estate Tax Return as part of a publicly filed document.

in concluding that the publication of the name of a rape victim, obtained from a public record, did not constitute an invasion of privacy, the Court commented that "[p]ublic records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media."[8]  *Cox Broad.*, 420 U.S. at 495.  Moreover, if the media could have headlined the financial details of the Williams Estate in the local newspaper or broadcast them on the evening news without violating a right of privacy, it stretches logic to conclude that a citizen could not do so in a personal conversation.

In essence, the § 1983 count improperly conflates the federal constitutional right of privacy with a state statutory right of confidentiality.  The Estate information Ms. Baker allegedly revealed was not private, as it was a matter of public record, and its disclosure cannot give rise to a constitutional violation.  Even though Maine state law makes it plain that the state does not wish to have its Revenue Service employees gossiping about the sensitive financial information its citizens' estates are required by law to file with the state government, this state law does not, as Plaintiff claims, harden a statutory mandate of confidentiality into a constitutional right of privacy.[9]  Whether Ms. Baker violated state law and whether the violation gives rise to a private cause of action in state court is not of federal constitutional significance and must await the considered judgment of a state court.

---

[8] Plaintiff argues that *Cox Broadcasting* does not control because it addressed the tort of invasion of privacy, not the constitutional right of privacy.  The right of privacy – whether grounded in tort or constitutional law principles – is premised on an objectively reasonable expectation of privacy, which cannot obtain for publicly disclosed information.

[9] Plaintiff cites no authority for the novel proposition that the scope of the federal constitutional right of privacy is defined by the parameters of a state confidentiality statute.

9

### III.  CONCLUSION

The Court GRANTS the Defendant's motion for summary judgment (Docket # 15) as to Count I of the Complaint.  Count I is the sole basis for federal jurisdiction and the Court declines to exercise supplemental jurisdiction over the remaining state law claims; the remaining claims are DISMISSED without prejudice.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of December, 2006